## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| **TAYLOR (SMITH) BURKS,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Cause No: 3:17-cv-316** |
| | ) |
| **CHECKERS DRIVE-IN RESTAURANTS, INC.,** | ) |
| **d/b/a RALLY'S and WELLSPRING CAPITAL** | ) |
| **MANAGEMENT INC., d/b/a RALLY'S,** | ) |
| **Defendants.** | ) |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Comes now the Plaintiff, Taylor Burks, by counsel, Colby A. Barkes of the law firm Blachly Tabor Bozik & Hartman LLC, and for Plaintiff's Complaint against Defendants, Checker's Drive-in Restaurants, Inc., and Wellspring Capital Management Inc., states to the Court as follows:

## JURISDICTION

1.      During times relevant to Plaintiff's Complaint, the Plaintiff, Taylor Smith who is now known as Taylor Burks, is a citizen of LaPorte County, Indiana, residing in the city of Michigan City, county of LaPorte, state of Indiana. Plaintiff is currently domiciled in LaPorte County, Michigan City, Indiana.

2.      The Defendant, Wellspring Capital Management, Inc., is a Delaware Corporation and maintained and conducted business as Checkers Drive-In Restaurants, Inc., in the City of Michigan City, county of LaPorte, state of Indiana, and has at all relevant times herein. Wellspring Capital Management, Inc.'s principal address is in Tampa, Florida.

1

3.      The Defendant, Checkers Drive-In Restaurants, Inc., is a for-profit foreign corporation licensed to do business in the State of Indiana, and does business as Rally's in the City of Michigan City, county of LaPorte, state of Indiana, and has at all relevant times herein. Checkers Drive-In Restaurants, Inc.'s principal address is in Tampa, Florida.

4.      During all times relevant to Plaintiff's Complaint, Plaintiff was Defendants' (collectively "Rally's") applicant or employee and performed work at Rally's located in the city of Michigan City, county of LaPorte, state of Indiana.

## FACTUAL BACKGROUND

5.      Upon information and belief, Defendant, Wellspring Capital Management, Inc., has over 800 franchised and Company-operated Checkers Drive-In Restaurants, Inc., (hereinafter collectively "Rallys" or "Defendants") locations across 27 states.

6.      During all times relevant to Plaintiff's Complaint, the Plaintiff is a black female.

7.      During times relevant to Plaintiff's Complaint, the Plaintiff was known by her maiden name, Taylor Smith. Plaintiff is currently married and is now known as Taylor Burks (hereinafter "Smith-Burks" or the "Plaintiff").

8.      When Smith-Burks applied for the position of shift manager she was not visibly pregnant and did not inform Defendants of her pregnancy before being hired because it is unlawful for employers to base their hiring decisions on pregnancy.

9.      Smith-Burks possessed the necessary education and experience required to be hired as a shift manager at Rallys, which required Smith-Burks to have a high school education or GED and a valid driver's license. Smith-Burks passed Rallys' background check.

10.     Smith-Burks was hired by Defendants around January 20, 2015, to be a shift manager trainee at Rallys' restaurant located on Franklin Street in Michigan City, Indiana.

2

11.     Smith-Burks began her manager-training at Rallys around January 22, 2015.

12.     Smith-Burks' immediate supervisor at Rallys was Gloria Reed ("Ms. Gloria").

13.      Smith-Burks understood from Ms. Gloria, Smith-Burks would be scheduled to work forty (40) hours per week for manager-training. Smith-Burks worked around thirty-two 32 hours over four (4) days, beginning January 22, 2015.

14.     Smith-Burks received pay on a debit card issued to her from Wellspring Capital Management LLC for work Smith-Burks performed at Rallys.

15.     After Smith-Burks began work at Rallys, she informed Ms. Gloria of her pregnancy. Ms. Gloria informed Smith-Burks that Defendants would not have hired Smith-Burks for manager-training if it had been known Smith-Burks was pregnant.

16.     Around February 4, 2015, Ms. Gloria informed Smith-Burks by phone it was decided by Defendants that Smith-Burks would not be allowed to complete manager-training while pregnant. Ms. Gloria was at Rallys performing her duties as general manager for this telephone call.

17.     Smith-Burks informed Ms. Gloria she did not want to be demoted because of her pregnancy. Ms. Gloria replied that Smith-Burks' performance was good, but Smith-Burks' pregnancy-related sickness made her unreliable.

18.     Smith-Burks suffered pregnancy-related dizziness and cramps during manager-training at Rallys for which Smith-Burks requested accommodation of sitting in the office for a few minutes. Upon information and belief, a non-pregnant white comparable manager-trainee coworker was allowed to sit in the office with her shoes off and her feet up.

19.     Smith-Burks' was involuntarily terminated from Rallys' manager-training, which was motivated by her pregnancy.

20.     Smith-Burks understood from Ms. Gloria, this decision was reached by Defendants after Ms. Gloria informed her supervisor of Smith-Burks' pregnancy. Ms. Gloria's immediate supervisor, Robinson Petit-Bien ("Mr. Robinson"), held the job title of district manager and was commonly known in their workplace as Mr. Robinson.

21.     Also during their phone call around February 4, 2015, Ms. Gloria suggested Smith-Burks accept demotion to the position of an hourly team/crew member while pregnant. Ms. Gloria suggested Smith-Burks scheduled hours would be reduced if she accepted this demotion. Ms. Gloria informed Smith-Burks, if Smith-Burks accepted this demotion she would have to pass another background check for her team member application. Ms. Gloria also suggested Smith-Burks could re-enter manager-training after she gave birth to her baby, provided Smith-Burks returned to work after giving birth and a shift manager position became open and available.

22.     Smith-Burks had no pregnancy-related attendance issues while working at Rallys. Smith-Burks was unable to work one Saturday because of Rallys' scheduling practice and procedure. In this instance, Smith-Burkes was scheduled to close with Charmaine on Friday-night, which shift ran into Saturday-morning when Smith-Burks was also scheduled to work another shift the same Saturday. Since closing with Charmaine caused Smith-Burks to get off work around 6:00 a.m. Saturday-morning, Rallys' policy would not allow Smith-Burks to work both scheduled shifts.  Further, Rallys failed to pay Smith-Burks for all hours she worked.

23.     After consideration of Ms. Gloria's offer of demotion, around February 6, 2015, Smith-Burks reluctantly accepted demotion to a team/crew member because she was single, pregnant, and wanted to work. Thereafter, Ms. Gloria spoke with Smith-Burks about hours worked for which Smith-Burks was not paid.

4

24.     Around February 6, 2015 and February 9, 2015, Smith-Burks complained to Defendants, by Ms. Gloria, of failure to pay Smith-Burks for all hours she worked.

25.     Around February 10, 2015, Smith-Burks called Defendants' corporate-human resources to complain of pregnancy discrimination.

26.     Around February 17, 2015, Smith-Burks complained to Mr. Robinson of Defendants' failure to pay Smith-Burks for all hours she worked.

27.     After Smith-Burks complained of pregnancy discrimination and failure to pay Smith-Burks for all hour she worked, Defendants terminated Smith-Burks from manager-training, permanently removed Smith-Burks from Rallys' work schedules and failed to rehire Smith-Burks after she gave birth.

28.     Defendants were negligent in investigating or remedying the discrimination complained about by Smith-Burks.

29.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") around March 6, 2015, against Defendants alleging discrimination and retaliation based on her sex plus pregnancy, and race discrimination.[1] [Ex.A]

30.     Smith-Burks gave birth to her child during May 2015. Around the end of May 2015, Smith-Burks requested return to Defendants' manager-training program.

31.     Defendants, by Ms. Gloria, instructed Smith-Burks to submit a new application to Rallys, which Smith-Burks did.

32.     Smith-Burks informed Defendants, by Ms. Gloria, her application was completed and electronically sent. Ms. Gloria indicated she would pull Smith-Burks' application, speak with her supervisor about Smith-Burks' return to work, and call Smith-Burks later that same day.

---

[1] A copy of Smith-Burks's EEOC Charge No.470-2015-01333 file-stamped March 6, 2015, against Defendants is attached hereto as Exhibit A, and is incorporated by reference.

Thereafter Smith-Burks received no communication from Defendants.

33.   Smith-Burks called and attempted to speak with Ms. Gloria several times using Ms. Gloria's phone number and the phone number for Rallys' restaurant located on Franklin Street in Michigan City, Indiana. Ms. Gloria failed to take Smith-Burks' calls. Ms. Gloria did not return Smith-Burks' calls.

34.   Smith-Burks received no response to her verbal and written requests to be returned to work for Defendants' manager-training program. Upon information and belief, Defendants actions and inactions are retaliation for Smith-Burks' prior complaints of pregnancy discrimination, failure to pay Smith-Burks for all hours she worked, and for filing a Charge of Discrimination against Defendants with the EEOC.

35.   Smith-Burks filed a second Charge of Discrimination with the EEOC around August 25, 2015, against Defendants alleging retaliation and discrimination based upon her gender plus care-giver responsibilities as a single mother.[2]  [Ex.B]

## Verification

I hereby swear or affirm, under the penalty and pains of perjury, that the above fact representations of in paragraphs 5 through 35 are true and accurate.

_____
TAYLOR BURKS

---

[2] A copy of Smith-Burks's EEOC Charge No. 470-2015-02805 file-stamped August 25, 2015, is attached hereto as Exhibit B, and is incorporated herein by reference.

6

36.     The EEOC issued its Determination dated February 28, 2017, as to the merits of Smith-Burks Charges.[3] [Ex.C] Based on evidence obtained by the EEOC during the its investigation, the EEOC found "…there is reasonable cause to believe that Charging Party's pregnancy was a factor in her demotion and that her complaint of discrimination led to her removal from the schedule as a crew member resulting in termination and failed to return her to work after the birth of her baby, in violation of Title VII…". [Ex.C p.1]

37.      After issuing its Determination, the EEOC attempted to conciliate.

38.     On March 29, 2017, Smith-Burks received a Notice of Right to Sue (Conciliation Failure) for Charge No. 470-2015-01333 from the EEOC advising Smith-Burks of her 90-days to file a Complaint against Rallys.[4] [Ex.D] According to Smith-Burks's right-to-sue, the EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in Smith-Burks's EEOC Charge. [Ex.D]

39.     On March 29, 2017, Smith-Burks received a Notice of Right to Sue (Conciliation Failure) for Charge No. 470-2015-02805 from the EEOC advising Smith-Burks of her 90-days to file a Complaint against Rallys.[5] [Ex.E] According to Smith-Burks's right-to-sue, the EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in Smith-Burks's EEOC Charge. [Ex.E]

40.      During all times relevant to Plaintiff's Complaint, Rallys is an employer pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e)) as amended by the Civil Rights Act of 1991 (hereinafter "Title VII"), and 42 U.S.C. § 1981, as amended.

---

[3] A copy of the Determination issued by the EEOC dated Feb. 28, 2017, is attached hereto marked as Exhibit C, and is incorporated herein by reference.
[4] A copy of Smith-Burks's Notice of Right to Sue (Conciliation Failure) mailed Mar. 27, 2017, related to EEOC Charge No. 470-2015-01333 is attached hereto as Exhibit D, and is incorporated herein by reference.
[5] A copy of Smith-Burks's Notice of Right to Sue (Conciliation Failure) mailed Mar. 27, 2017, related to EEOC Charge No. 470-2015-02805 is attached hereto as Exhibit E, and is incorporated herein by reference.

41.     The EEOC found Defendants to not be in compliance with Title VII of the Civil Rights Act of 1964, as amended. [Exs. C, D & E]

42.     Under the doctrine of *respondeat superior* Perfumania is responsible for and subject to liability for wrongdoing by Ms. Gloria and/or Mr. Robinson.

43.     Upon information and belief, Defendants employs more than 500 employees nationwide.

### COUNT I
### TITLE VII OF THE CIVIL RIGHTS ACT
### (Sex Plus Pregnancy Discrimination & Retaliation)

Comes now the Plaintiff, by counsel, Blachly Tabor Bozik & Hartman LLC and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

44.     Plaintiff incorporates by reference paragraphs of the Factual Background section as though fully set forth herein.

45.     During all times relevant to Plaintiff's Complaint, Defendants engaged in commerce, industry, or activity affecting commerce; Defendant employed 500 or more employees for each working day during 20 or more calendar workweeks during 2014 and 2015. Defendants are an employer pursuant to Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000(e)(5), as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, as amended.

46.     Smith-Burks, a female, informed Defendants of her pregnancy after she began work at Rallys located on Franklin Street in Michigan City, Indiana, around January 22, 2015. Smith-Burks was not restricted in working by her healthcare provider related to her pregnancy.

47.     After experiencing dizziness and cramps in the workplace, for which Smith-Burks requested accommodation of sitting in the office for a few minutes, Defendants sent Smith-Burks home and instructed her not to return to work.

48.     Due to her pregnancy, Defendants removed Smith-Burks from their manager-training program.

49.     Defendants would not have removed Smith-Burks from their manager-training program if not for Smith-Burks' pregnancy-related sickness and Defendants' perception of Smith-Burks as unreliable due to pregnancy.

50.     Upon information and belief, Defendants assumed as a single-mother, Smith-Burks would not return to work at Rallys after giving birth to her baby.

51.     Smith-Burks was treated less favorably than non-pregnant comparable manager-trainee coworkers at Rallys.

52.     Smith Burks complained of pregnancy discrimination to Defendants.

53.     Defendants were negligent in investigating or remedying the tangible/adverse employment action(s) suffered and complained about by Smith-Burks.

54.     After Smith-Burks complained of pregnancy discrimination, Defendants by their agents, representatives, servants, and/or employees (including without limitation Ms. Gloria and Mr. Robinson) removed Smith-Burks from Rallys' schedule as a team/crew member resulting in termination of Smith-Burks employment at Defendants. Smith-Burks suffered tangible and/or adverse employment actions after complaining to Defendants by their agents, representatives, servants and/or employees (including without limitation Ms. Gloria) of pregnancy discrimination.

55.     Defendants would not have removed Smith-Burks from Rallys schedule if not for Smith-Burks' pregnancy.

56.     Smith-Burks was treated less favorably by Defendants' agents, representatives, servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson) because

of Smith-Burks' pregnancy.

57.     Defendants' conduct towards Smith-Burks due to her sex/female and pregnancy was sufficiently severe or pervasive to altered the terms and conditions of Smith-Burks' employment.

58.     Smith-Burks was treated less favorably than non-pregnant comparable manager-trainee coworkers at Rallys.

59.     Defendants exhibited discriminatory treatment against Smith-Burks in the terms and conditions of her employment on account of Smith-Burks' sex/female and her pregnancy.

60.     Smith-Burks's tangible/adverse employment action(s) by Defendants were motivated by her pregnancy and/or retaliation for Smith-Burks complaining about pregnancy discrimination.

61.     Upon information and belief, the actions and conduct of Defendants would likely deter other employees from engaging in protected activity including but not limited to voicing informal complaints to superiors and/or filing an EEOC Charge of Discrimination.

62.     The EEOC determined there is reasonable cause to believe Smith-Burks' pregnancy was a factor in her demotion from Defendants' manager-trainee program and Smith-Burks' complaint of discrimination led to her removal from the schedule as a team/crew member resulting in termination of Smith-Burks' employment at Rallys in violation of Title VII. [Ex.C]

63.     During the course and scope of Smith-Burks' employment, Defendants, by their agents, representatives, servants and/or employees, acting within the course and scope of their employment (including without limitation Ms. Gloria and Mr. Robinson) demonstrated a continuous, repetitious and degenerative cycle and pattern of discrimination against Smith-Burks due to her pregnancy that Defendants condoned and ratified, took no action to stop, and

performed willfully or wantonly against Smith-Burks, while Defendants were aware or should have been aware of such misconduct by and through their agents, representatives, servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson) all in violation of the Pregnancy Discrimination Amendment to Title VII (42 U.S.C. § 2000e(k)) commonly referred to as the Pregnancy Discrimination Act.

64.     During the course and scope of Smith-Burks' employment at Defendants, Defendants by their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria and Mr. Robinson), acting within the course and scope of their employment, demonstrated a continuous, repetitious, cycle and pattern of harassment, discrimination and retaliation against pregnant female employees by denying them entrance/participation in Rallys' manager-trainee program, which Defendants condoned and ratified, took no action to stop, and performed willfully or wantonly while Defendants were aware or should have been aware of such misconduct by and through their agents, servants, supervisors, administrators, human resources and/or employees in violation of the Pregnancy Discrimination Amendment to Title VII (42 U.S.C. § 2000e(k)) commonly referred to as the Pregnancy Discrimination Act. Said discrimination by Defendants and theirs agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria and Mr. Robinson) was willful, wanton, malicious, intentional and oppressive.

65.     During the course and scope of Smith-Burks' employment, Defendants, by their agents, representatives, servants and/or employees, acting within the course and scope of their employment (including without limitation Ms. Gloria and Mr. Robinson) retaliated against Smith-Burks for her complaining of what she perceived to be unlawful employment practices to supervisory employees and/or human resources at Defendants, as Smith-Burks was lawfully

11

entitled to do, which retaliation Defendants condoned and ratified, took no action to stop, and performed willfully and wantonly against Smith-Burks while Defendants were aware or should have been aware of such conduct, all in violation of the PDA.

66.    During the course and scope of Smith-Burks' employment at Defendants, Defendants by their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria and Mr. Robinson), acting within the course and scope of their employment, demonstrated a continuous, repetitious, cycle and pattern of denying enjoyment of equal benefits and privileges of employment, failing to provide reasonable accommodation and/or treating unfavorably pregnant female employees by denying them entrance/participation in Rallys' manager-trainee program, which Defendants condoned and ratified, took no action to stop, and performed willfully or wantonly while Defendants were aware or should have been aware of such misconduct by and through their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria and Mr. Robinson) was  in violation of the Pregnancy Discrimination Amendment to Title VII (42 U.S.C. § 2000e(k)) commonly referred to as the Pregnancy Discrimination Act. Said discrimination by Defendants and their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria and Mr. Robinson) was willful, wanton, malicious, intentional and oppressive.

67.    Defendants by their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria and Mr. Robinson), denied Smith-Burks enjoyment of equal benefits and privileges of employment, treated non-pregnant comparable manager-trainee coworkers of Smith-Burks more favorably than Smith-Burks, which Defendants condoned and ratified, took no action to stop, and performed willfully or wantonly

against Smith-Burks, while Defendants were aware or should have been aware of Smith-Burks'
disparate treatment and retaliation by and through their agents, servants, supervisors,
administrators, human resources and/or employees (including without limitation Ms. Gloria and
Mr. Robinson), in violation of the Pregnancy Discrimination Amendment to Title VII (42 U.S.C.
§ 2000e(k)) commonly referred to as the Pregnancy Discrimination Act. Said discrimination and
retaliation by Defendants and their agents, servants, supervisors, administrators, human resources
and/or employees (including without limitation Ms. Gloria and Mr. Robinson) was willful,
wanton, malicious, intentional and oppressive.

68.     Smith-Burks has suffered and continues to suffer substantial losses and earnings,
job experience, and other employment/retirement benefits that she rightfully would have
received absent discrimination/retaliation because of her pregnancy by Defendants and their
agents, representatives, servants and/or employees (including without limitation Ms. Gloria and
Mr. Robinson) all in violation of the PDA.

69.     Smith-Burks has incurred costs and expenses to file this action against
Defendants to protect the constitutional and statutory rights of Smith-Burks with respect to
Defendants. Smith-Burks has suffered garden-variety emotional distress, general mental pain and
anguish, humiliation, embarrassment to name, character and reputation and/or decreased
employability due to the actions and inactions of Defendants and their agents, representatives,
servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson), which
justifies the award of compensatory damages in favor of Smith-Burks and against Defendants,
and an award in favor of Smith-Burks and against Defendants for her attorney fees, expert
witness fees and other costs associated in filing Plaintiff's Complaint against Defendants. In
addition, the above acts by Defendants and their agents, representatives, servants and/or

13

employees (including without limitation Ms. Gloria and Mr. Robinson), individually and in concert, were willful, wanton, malicious, intentional and oppressive, acts of discriminatory practice(s) by Defendants, Ms. Gloria and Mr. Robinson who engaged in discriminatory practice(s) with malice or with reckless indifference to the federally protected rights of Smith-Burks in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)1, which justify the awarding of punitive damages in favor of Smith-Burks against Defendants; therefore, said Defendants are liable for punitive damages.

WHEREFORE, the Plaintiff, by counsel, Blachly Tabor Bozik & Hartman LLC requests relief of the Court consisting of all the following:

a.  Compensatory and punitive damages;
b.  Equitable relief and costs including, but not limited to, backpay, wage disparity and reinstatement with the same seniority status Smith-Burks would have had but for her discrimination or, in the alternative, Front pay;
c.  Expenses of litigation and reasonable attorney fees and costs;
d.  Prejudgment interest; and
e.  All other just and proper relief in the premises, against Defendants; and
f.  All other legal and/or equitable relief this Court sees fit to grant.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT
## AND VIOLATION OF  42 U.S.C. § 1981, as amended (*Race Discrimination*)

Comes now the Plaintiff, by counsel, Blachly Tabor Bozik & Hartman LLC and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

70.  Plaintiff incorporates by reference paragraphs of the Factual Background section as though fully set forth herein.

71.  During all times relevant to Plaintiff's Complaint, Defendants engaged in commerce, industry, or activity affecting commerce; Defendant employed 500 or more employees for each working day during 20 or more calendar workweeks during 2014 and 2015.

14

Defendants are an employer pursuant to Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000(e)(5), as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, as amended.

72.     42 U.S.C. § 1981 includes the making, performance and termination or contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981 prohibits racial discrimination, retaliation for engagement in protected activities, and in private as well as public contract of employment.

73.     Smith-Burks is a black female and thus a member of a protected class based on her race.  Smith-Burks was treated less favorably than white comparable manager-trainee coworker(s) at Rallys located on Franklin Street in Michigan City, Indiana, by Defendants' agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria).

74.     During all times relevant to Plaintiff's Complaint, Ms. Gloria was employed at Defendants in a supervisory role.

75.     Defendants by their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria), denied Smith-Burks enjoyment of equal benefits and privileges of employment, treated white comparable manager-trainee coworkers of Smith-Burks more favorably than Smith-Burks, which Defendants condoned and ratified, took no action to stop, and performed willfully or wantonly against Smith-Burks, while Defendants were aware or should have been aware of Smith-Burks' disparate treatment by and through their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e)(5), as amended by the Civil Rights Act of 1991, and in violation of 42 U.S.C. §1981 *et seq.*, as amended. Said discrimination by Defendants and their agents, servants, supervisors,

15

administrators, human resources and/or employees (including without limitation Ms. Gloria) was willful, wanton, malicious, intentional and oppressive. Said discrimination by Defendants and their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria) was willful, wanton, malicious, intentional and oppressive.

76.     During the course and scope of Smith-Burks' employment at Defendants, the Defendants, by their agents, servants, officers, supervisors and/or employees, among others, acting within the course and scope of their employment (including without limitation Ms. Gloria) and in their individual capacities, have demonstrated a continuous, repetitious, and degenerative cycle, pattern and practice of racial discrimination against Smith-Burks, which the Defendants condoned and ratified, took no action to stop, and performed willfully or wantonly against Smith-Burks, while Defendants were aware or should have been aware of such misconduct by and through their agents, employees, officers, servants and supervisors (including without limitation Ms. Gloria) all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e)(5), as amended by the Civil Rights Act of 1991 ("Title VII") and in violation of 42 U.S.C. §1981 *et seq.*, as amended ("Section 1981"). Said discrimination by Defendants and their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria) was willful, wanton, malicious, intentional and oppressive.

77.     As a result of the racially motivated discrimination of Smith-Burks, Smith-Burks has suffered and continues to suffer substantial losses and earnings, job experience, and other employment/retirement benefits that she rightfully would have received absent discrimination motivated by her race by Defendants and their agents, representatives, servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson) all in violation of Title VII and Section 1981.

16

78.     Smith-Burks has incurred costs and expenses to file this action against Defendants to protect the constitutional and statutory rights of Smith-Burks with respect to Defendants. Smith-Burks has suffered garden-variety emotional distress, general mental pain and anguish, humiliation, embarrassment to name, character and reputation and/or decreased employability due to the actions and inactions of Defendants and their agents, representatives, servants and/or employees (including without limitation Ms. Gloria), which justifies the award of compensatory damages in favor of Smith-Burks and against Defendants, and an award in favor of Smith-Burks and against Defendants for her attorney fees, expert witness fees and other costs associated in filing Plaintiff's Complaint against Defendants. In addition, the above acts by Defendants and their agents, representatives, servants and/or employees (including without limitation Ms. Gloria), individually and in concert, were willful, wanton, malicious, intentional and oppressive, acts of discriminatory practice(s) by Defendants and Ms. Gloria who engaged in discriminatory practice(s) with malice or with reckless indifference to the federally protected rights of Smith-Burks in violation of Title VII and Section 1981, which justify the awarding of punitive damages in favor of Smith-Burks against Defendants; therefore, said Defendants are liable for punitive damages.

WHEREFORE, Plaintiff, by counsel, request relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

    a.    Compensatory and punitive damages;
    b.    Equitable relief and costs including, but not limited to, backpay, wage disparity and reinstatement with the same seniority status Smith-Burks would have had but for her discrimination or, in the alternative, Front pay;
    c.    Expenses of litigation and reasonable attorney fees and costs;
    d.    Prejudgment interest; and
    e.    All other just and proper relief in the premises, against Defendants; and
    f.    All other legal and/or equitable relief this Court sees fit to grant.

## <u>COUNT III</u>
## <u>VIOLATIONS OF THE FAIR LABOR STANDARDS ACT</u>

Comes now the Plaintiff, by counsel, Blachly Tabor Bozik & Hartman LLC and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

79.     Plaintiff incorporates by reference paragraphs of the Factual Background section as though fully set forth herein.

80.     Smith-Burks was a non-exempt employee of Defendants, who earned, but did not receive, compensation for all time Smith-Burks worked at Rallys.

81.     Smith-Burks was at all times relevant to Plaintiff's Complaint an employee as the term is defined by 29 U.S.C. § 203(e).

82.     Defendants were at all times relevant to Plaintiff's Complaint an "employer" as term is defined by 29 U.S.C. § 203(d).

83.     Defendants paid Smith-Burks an hourly wage, but failed to pay Smith-Burks for all time Smith-Burks was discharging her work-related duties for Defendants.

84.     Smith-Burks complained to Defendants by their agents, servants, supervisors, administrators, human resources and/or employees (including without limitation Ms. Gloria and Mr. Robinson) of hours she worked for which Smith-Burks was not paid. Smith-Burks believed Defendants' failure to pay her for all hours she worked violated the Fair Labor Standards Act.

85.     Defendants failed to make adequate inquiry into whether their conduct was in compliance with the Fair Labor Standards Act ("FLSA").

86.     Smith-Burks suffered tangible and/or adverse employment actions after complaining to Defendants, by their agents, representatives, servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson) of their violation of the FLSA.

18

87.     Smith-Burks' assertion of her rights under the FLSA was a motivating factor in Defendants' removal of Smith-Burks from the schedule as a team/crew member resulting in Smith-Burks' termination from employment at Defendants and Defendants' failure to return Smith-Burks to work after the birth of her baby.

88.     The above acts by Defendants and their agents, representatives, servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson) were willful, wanton, malicious, intentional and oppressive violation of the FLSA and retaliation by Defendants who engaged in unlawful employment practice(s) with malice or with reckless indifference to the federally protected rights of Smith-Burks in violation of the FLSA.

89.     As a result of Defendants' willful violation of the FLSA and retaliation, Smith-Burks has suffered and continues to suffer substantial losses and earnings, job experience, and other employment/retirement benefits that she rightfully would have received absent Defendants' violation of the FLSA and retaliation by their agents, representatives, servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson).

WHEREFORE, Plaintiff, by counsel, request relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

a.     Lost wages;
b.     Liquidated damages;
c.     Expenses of litigation and reasonable attorney fees and costs;
d.     Pre- and post-judgment interest;
e.     All other just and proper relief in the premises, against Defendants; and
f.     All other legal and/or equitable relief this Court sees fit to grant.

## COUNT IV
## TITLE VII OF THE CIVIL RIGHTS ACT
### (*Retaliation and Sex/Female plus Caregiver Responsibilities Discrimination*)

Comes now the Plaintiff, by counsel, Blachly Tabor Bozik & Hartman LLC and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

90.      Plaintiff incorporates by reference paragraphs of the Factual Background section as though fully set forth herein.

91.      Smith-Burks filed her initial Charge of Discrimination with the EEOC against Defendants around March 6, 2015, alleging discrimination and retaliation based on her sex plus pregnancy, and race discrimination. [Ex.A]

92.      Prior to filing her initial Charge of Discrimination, Defendants by their agents, representatives, servants and/or employees (including without limitation Ms. Gloria) represented to Smith-Burks she could return to their manager-trainee program after the birth of her child.

93.      After the birth of her child, Smith-Burks requested return to work at Defendants around the end of May 2015 by and through Defendants' agents, representatives, servants and/or employees (including without limitation Ms. Gloria).

94.      Upon information and belief, Defendants knew or was aware Smith-Burks had filed an EEOC Charge against them when Smith-Burks sought return to work in their manager-trainee program.

95.      Smith-Burks electronically submitted application to Defendants as instructed by Ms. Gloria.

96.      Ms. Gloria indicated she would pull Smith-Burks' application, speak with her supervisor about Smith-Burks' return to work, and call Smith-Burks later that same day.

97.      Thereafter, Smith-Burks called and attempted to speak with Ms. Gloria several

20

times using Ms. Gloria's phone number and the phone number for Rallys' restaurant located on Franklin Street in Michigan City, Indiana. Ms. Gloria failed to take Smith-Burks' calls. Ms. Gloria did not return Smith-Burks' calls.

98.     Smith-Burks received no response from Defendants to her verbal and written requests to be returned to work for Defendants' manager-training program.

99.     Defendants failed to return Smith-Burks to work after the birth of her baby.

100.    Upon information and belief, Defendants actions and inactions are retaliation for Smith-Burks' filing a Charge of Discrimination against Defendants with the EEOC.

101.    Upon information and belief, Ms. Gloria falsely reported to corporate that Smith-Burks left work without permission, called Ms. Gloria later that day and requested demotion to team/crew member because Smith-Burks felt she was unable to continue with the manager-trainee program, and thereafter Smith-Burks never returned to work in an attempt to provide Defendants an illusory business reason for Smith-Burks's discharge.

102.    Smith-Burks suffered tangible/adverse employment action(s) by Defendants, which were motivated by retaliation for Smith-Burks filing her initial Charge of Discrimination with the EEOC.

103.     Upon information and belief, the actions and conduct of Defendants would likely deter other employees from engaging in protected activity including but not limited to voicing informal complaints to superiors and/or filing an EEOC Charge of Discrimination.

104.    Title VII provides Smith-Burks a right to complain of harassment, discrimination and retaliation in the workplace; to oppose discriminatory practices in the workplace that are believed to be a violation of Title VII; and to work in an environment free of retaliation for opposing unlawful employment practices.

21

105.    The EEOC determined there is reasonable cause to believe Smith-Burks'
complaint of discrimination led to Defendants' failure to return Smith-Burks to work after the
birth of her baby in violation of Title VII. [Ex.C]

106.    During the course and scope of Smith-Burks's employment at Defendants,
Defendants, by their agents, representatives, servants, and/or employees, acting within the course
and scope of their service and/or employment (including without limitation Ms. Gloria) retaliated
against and demonstrated a pattern of retaliation against Smith-Burks that Defendants condoned
and ratified, took no action to stop, and performed willfully or wantonly against Smith-Burks,
while Defendants were aware or should have been aware of such misconduct by and through
their agents, representatives, servants, and/or employees (including without limitation Ms.
Gloria), were all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), as
amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981a, as amended.

107.    Smith-Burks has suffered substantial losses and earnings, and other employment
benefits Smith-Burks rightfully would have received absent retaliation by Defendants, and
Defendant'' agents, representatives, servants, and/or employees (including without limitation Ms.
Gloria), all in violation of the Title VII. Defendants engaged in retaliatory practice(s) with malice
or with reckless indifference to the federally protected rights of Smith-Burks in violation of the
Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)1; therefore, said Defendants are liable for lost
wage damages and punitive damages.

108.    Smith-Burks has incurred costs and expenses to file this action against Defendants
to protect the constitutional and statutory rights of Smith-Burks with respect to Defendants.
Smith-Burks has suffered garden-variety emotional distress, general mental pain and anguish,
humiliation, embarrassment to name, character and reputation due to the actions and inactions of

Defendants and their agents, representatives, servants and/or employees (including without limitation Ms. Gloria), which justifies the award of compensatory damages in favor of Smith-Burks and against Defendants, and an award in favor of Smith-Burks and against Defendants for her attorney fees, expert witness fees and other costs associated in filing Plaintiff's Complaint against Defendants. In addition, the above acts by Defendants and their agents, representatives, servants and/or employees (including without limitation Ms. Gloria), individually and in concert, were willful, wanton, malicious, intentional and oppressive, and justify the awarding of punitive damages in favor of Smith-Burks against Defendants.

WHEREFORE, the Plaintiff, by counsel, Blachly Tabor Bozik & Hartman LLC requests relief of the Court consisting of all the following:

a.   Compensatory and punitive damages;
b.   Equitable relief and costs including, but not limited to, backpay, wage disparity and reinstatement with the same seniority status Smith-Burks would have had but for her discrimination or, in the alternative, Front pay;
c.   Expenses of litigation and reasonable attorney fees and costs;
d.   Prejudgment interest; and
e.   All other just and proper relief in the premises, against Defendants; and
f.   All other legal and/or equitable relief this Court sees fit to grant.

## COUNT V
## NEGLIGENT TRAINING/SUPERVISION/RETENTION
## AND VICARIOUS LIABILITY (*Respondeat superior*)

Comes now the Plaintiff, by counsel, Blachly Tabor Bozik & Hartman LLC and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

109.   Plaintiff incorporates by reference paragraphs 5 through 108 of Plaintiff's Complaint as though fully set forth herein.

110.   At all times relevant herein, Defendants had a duty to train individuals with managerial responsibilities (including without limitation Ms. Gloria and Mr. Robinson) to

23

perform all duties expected of supervisory employees, including instructing those employees on the proper way to supervise and manager their employees, how to conduct themselves within the workplace and about laws protecting employees from discrimination and retaliation.

111.    At all times relevant herein, Defendants had a duty to discipline or remove anyone who acted in reckless disregard of or in a negligent manner toward other employees that violates State or Federal laws and protections.

112.    Defendants failed to ensure all employees, including Smith-Burks, were provided a work environment where they would not be subject to discrimination, retaliation and/or conduct that violates employees' state and federally protected rights.

113.    Defendants failed to take necessary steps to monitor Ms. Gloria's supervision of employees (including without limitation Smith-Burks).

114.    Defendants failed to take necessary steps to monitor Mr. Robinson's supervision of employees (including without limitation Smith-Burks).

115.    At all times relevant herein, Defendants had a duty to Friday to ensure that all their employees were fit for their positions and that employees would not be subject to discrimination, retaliation and/or conduct that violates employee's state and federally protected rights.

116.    Smith-Burks had a right to expect Defendants would perform their legally obligated duties to employ, train and supervise their managers (including without limitation Ms. Gloria and Mr. Robinson) to ensure they would not violate subordinate employees' state and federally protected civil rights.

117.    Defendants were negligent and breached their duties to Smith-Burks by failing to take reasonable steps to discover Ms. Gloria and/or Mr. Robinson engaged in conduct that

unreasonably interfered with Smith-Burks' job performance and caused substantial detriment to Smith-Burks' employment relationship with Defendants and/or were negligent and breached their duties to Smith-Burks by retaining Ms. Gloria and/or Mr. Robinson in supervisory positions.

118.    As a direct and proximate result of Defendant's action, inactions, omissions and retention of Ms. Gloria and Mr. Robinson, Smith-Burks was retaliated against by Defendants when their agents, representatives, servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson) failed to return Smith-Burks to work after the birth of her baby, which is continues and is ongoing.

119.    As a further direct and proximate result of Defendants' action, inactions and omissions of negligent training, supervision and retention of their agents, representatives, servants and/or employees (including without limitation Ms. Gloria and Mr. Robinson), Smith-Burks has suffered embarrassment, humiliation, general emotional distress, general mental pain and suffering, decreased employability and damage to her character and reputation. Smith-Burks lost wages and employment benefits she would have received, but for Defendants' negligent training, supervision and retention.

120.    At all times material to this cause of action, Defendants' corporate human resources, agents, representatives, servants, employees (including without limitation Ms. Gloria and Mr. Robinson) were acting as agents, representatives and/or employees of Defendants, and were at such times acting within the full course, scope and authority of their positions, therefore, imputing liability to Defendants for their conduct and resulting in damages to Smith-Burks as outlined above, under the principles of *respondeat superior*, the law of agency, and the laws of the State of Indiana as applicable. Smith-Burks is therefore entitled to general, compensatory and

punitive damages from Defendants.

WHEREFORE, Plaintiff, by counsel, prays this Honorable Court find in her favor and against Defendant as follows:

    a.    Enter judgment on her behalf against the Defendant for negligent hiring, training, supervision and/or retention;

    b.    Award Plaintiff actual/compensatory damages in an amount which will reasonably compensate Friday for her damages;

    c.    Award Plaintiff punitive damages;

    d.    Award Plaintiff all equitable relief and costs;

    e.    Award Plaintiff expenses of litigation and reasonable attorney fees and costs; and.

    f.    All other just and proper relief in the premises against Defendants this Court sees fit to grant.

Respectfully submitted,
**Blachly Tabor Bozik & Hartman, LLC**

 /s/  Colby A. Barkes
Jeffrey S. Wrage (#18262-64)
Colby A. Barkes (#26251-64)
56 Washington Street, Suite #401
Valparaiso, Indiana 46383
Ph. (219) 464-1041
Fax (219) 464-0927
jswrage@btbhlaw.com
cabarkes@btbhlaw.com
Attorney for Plaintiff

26

## JURY DEMAND

Comes now the Plaintiff, Taylor Smith-Burks, by counsel, Blachly Tabor Bozik & Hartman

LLC, and demands trial by jury.

Respectfully submitted,
**Blachly Tabor Bozik & Hartman, LLC**

/s/  Colby A. Barkes
Jeffrey S. Wrage (#18262-64)
Colby A. Barkes (#26251-64)
56 Washington Street, Suite #401
Valparaiso, Indiana 46383
Ph. (219) 464-1041
Fax (219) 464-0927
jswrage@btbhlaw.com
cabarkes@btbhlaw.com
Attorney for Plaintiff

27